UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JACK A. RUSSO CORPORATION,

        Plaintiff,

v.                                                            Case number 07-10913
                                                            Honorable Julian Abele Cook, Jr.

FIRST SPECIALITY INSURANCE
CORPORATION,

        Defendant.


ORDER

This lawsuit, which was originally filed in the Wayne County Circuit Court of Michigan, arises from a dispute between the Plaintiff, Jack A. Russo Corporation[1], and the Defendant, First Speciality Insurance Corporation over the applicability, if any, of insurance coverage.

On June 24, 2005, First Speciality issued a "Commercial General Liability Insurance Policy" which provided insurance protection to the Russo Corporation, a trucking business firm, for any claims of liability relating to bodily injuries, property damage and personal advertising injuries by third parties. This policy, which was effective from June 15, 2005 until June 15th of the following year, contained an "Employee, Independent Contractors, Leased Workers or Volunteers" endorsement.[2]

---

[1] For purposes of simplicity, the parties will be identified in this order as "Russo" and "First Speciality" respectively.

[2] This endorsement states, in pertinent part, as follows:

"This insurance does not apply:

On February 14, 2006, a conflict occurred between two independent contractors (KlodianYzo and Mike Underwood), both of whom were under a contractual agreement to operate their trucks and deliver material to designated sites and customers on behalf of the Russo Corporation. According to Yzo, he was severely injured by Underwood who struck him with a metal pipe and subjected him to unprovoked racial taunts and insults while they were on the premises of the Russo Corporation.[3] Following this incident, Yzo filed a lawsuit in a state court against Underwood and the Russo Corporation, seeking an award of damages for assault and battery, ethnic intimidation, racial discrimination, harassment, hostile work environment, as well as the intentional infliction of emotional distress. Upon its receipt of Yzo's pleading papers, the Russo Corporation forwarded them to First Speciality to whom it asked for an assumption of its

---

1. to 'bodily injury' to an 'employee,' independent contractor, leased worker or volunteer of the insured arising out of and in the course of employment by or service to the insured for which the insured may be held liable as an employer or in any other capacity;

2. to any obligation of the insured to indemnify or contribute with another because of damages arising out the 'bodily injury' to an 'employee,' independent contractor, leased worker or volunteer of the insured arising out of and in the course of employment by or service to the insured for which the insured may be held liable as an employer or in any other capacity. . . ."

The policy also provides that "[t]his exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

'Bodily Injury' is defined as:

Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

[3] Yzo also complains that Underwood had made racially insensitive comments to other Russo Corporation employees as well.

defense and indemnification in the pending state court litigation. Although First Speciality initially acceded to the Russo Corporation's request, this decision was subsequently changed when it decided to deny coverage. Thereafter, the Russo Corporation proffered a defense against Yzo's claims with its own counsel.

Thereafter, the Russo Corporation initiated this lawsuit in the Wayne County Circuit Court of Michigan. However, First Speciality caused the removal of the case to this federal court on March 1, 2007. In May 2007, the parties filed dispositive motions, both of which are now before the Court for its consideration.[4]

I.

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Fed.R.Civ. P.56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is upon the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any documents (i.e., pleadings, depositions, answers to interrogatories, admissions, and affidavits) in a light that is most favorable to the opposing party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland*

---

[4] On May 17, 2007, the Russo Corporation filed a motion for summary judgment, seeking to obtain coverage under the insurance contract between the parties. On the following day, First Speciality filed a motion for the entry of a judgment on the pleadings, contending that it does not have a duty to defend or indemnify the Russo Corporation because of certain provisions and exclusions with the parties' insurance agreement. Fed. R. Civ. P. 12©

*Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is the obligation of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a moving party can successfully demonstrate that a genuine factual issue is lacking if the quality of the evidence is sufficient to make the issue "so one-sided that [it] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

II.

Every motion, which has been filed pursuant to Fed. R. Civ. P. 12©,[5] assumes that (1) the factual allegations within the complaint are accurate, and (2) the opposing party will be unable to prove any legally cognizable set of facts that would support its position. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group,* 463 F.3d 478, 487 (6th Cir. 2006). Upon its review of such a motion, a court must construe the complaint in a light that is most favorable to the opposing party. *Ziegler*

---

[5] Fed. R. Civ. P. 12© reads as follows:
"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

*v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir. 2001). Moreover, a motion, which has been filed under Rule 12©, must establish that there are no genuine issues of a material fact, and the moving party is entitled to a judgment as a matter of law. *See Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir. 1993).

Typically, any ambiguities within insurance contracts must be construed against the insurer. *American Bumper & Mfg. v. Hartford Fire Ins. Co.,* 452 Mich. 440, 452 (1996). It is also axiomatic that an insurer's obligation to defend the insured is broader than its singular duty to indemnify. *Id.* at 450. In fact, a duty to defend reaches even those cases in which the allegations "even arguably come within the policy coverage." *Id.* at 451. However, when determining whether a duty to defend and indemnify exists, a reviewing court should consider whether coverage exists under the policy, and if it does, whether an exclusionary clause applies. *All Ins. Co. v. Freeman,* 432 Mich. 656, 661 (1989). It is well established that an insurer is not obligated to defend those claims which have been excluded from the policy. *See Protective Nat'l Ins. Co. v. Woodhaven,* 438 Mich. 154, 159 (1991).

III.

In this case, the Russo Corporation has raised three basic arguments; namely, that (1) the language within the exclusion clause of the insurance policy is ambiguous and, as such, it cannot serve as a legitimate basis upon which to deny coverage, (2) Yzo's claimed injuries were not caused as the result of his duties as an independent truck driver, and (3) Underwood's misdeeds, if true, were acts which did not have any reasonable relationship with his service contract. The Russo Corporation contends that the exclusions within the policy, upon which First Specialty relied in making its decision against insurance coverage, are without justification and should not be

considered to be an employment related action.[6] The Russo Corporation also takes issue with First Speciality's denial of coverage for Yzo' claims of non-bodily injuries which include ethnic intimidation, racial discrimination and discrimination against national origin, harassment, hostile work environment, and intentional infliction of emotional distress.

In its opposition papers, First Speciality stands firm on its decision to deny defense coverage for the Russo Corporation, arguing that Underwood was within the course of his employment at the time of his altercation with Yzo. First Speciality also submits that Yzo's claims in the state court action arose from the Russo Corporation's inaction or failure to prevent his injuries. First Specialty points to the claims by Yzo who maintained that the Russo Corporation was aware, or should have been aware, of Underwood's propensity for making racially inflammatory comments to other persons (i.e., employees) prior to the February 2006 incident. Thus, it is First

---

[6] Specifically, that portion of the policy reads as follows:

This insurance does not apply to:

"Bodily Injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    © Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person...

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Speciality's view that Yzo's claims, when intertwined with the issues of potential liability involving the Russo Corporation, support its decision to reject insurance coverage on the basis of the provisions within the exclusion clause in the policy. First Speciality also maintains that the Russo Corporation is not entitled to coverage for Yzo's bodily and non-bodily injury claims. Given that Yzo failed to allege a physical manifestation of his mental injuries, First Speciality maintains that the Russo Corporation is not entitled to coverage for Yzo's non-bodily claims. *Greenman v. Michigan Mutual Insurance Company,* 173 Mich. App. 88, 92 (1988).

IV.

The record supports the conclusion that Yzo was an independent contractor who was on Russo's premises at the time of the incident. Although Underwood's conduct was neither implicitly nor expressly authorized by the Russo Corporation, it arose during the course of his employment with the Russo Corporation and while he was providing services to the Russo Corporation. The February 2006 incident occurred while Yzo and Underwood were on the Russo Corporation property in connection with their employment as truck drivers. Although Underwood's alleged misconduct may not have been within the scope of his employment (i.e. not authorized to engage in violent acts), it certainly arose out of his contractual relationship with the Russo Corporation. The policy specifically excludes coverage for bodily injuries sustained by independent contractors "arising out of and in the course of employment by or service to" the Russo Corporation. Accordingly, First Speciality does not owe defense and indemnity to the Russo Corporation for the lawsuit filed by Yzo or for the bodily injuries claimed by Yzo.

Furthermore, inasmuch as (1) Yzo has not alleged any physical manifestation arising out of his emotional trauma, and (2) the Russo Corporation has acknowledged that coverage may not apply for non-bodily injuries, the Court determines that First Speciality does not owe defense and

indemnity for causes of action pertaining to non-bodily injuries in Yzo's Complaint.

V.

For these reasons, the Court will deny Russo's motion for summary judgment, and grant First Speciality's motion for a judgment on the pleadings.

IT IS SO ORDERED.

Dated: <u>August 20, 2007</u>         <u>s/ Julian Abele Cook, Jr.</u>
       Detroit, Michigan         JULIAN ABELE COOK, JR.
       United States District Court Judge

<u>Certificate of Service</u>

I hereby certify that on August 20, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

       <u>s/ Kay Alford</u>
       Courtroom Deputy Clerk